IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEREMY LEEPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1091-E-BN |
| | § | |
| CARTE BLANCHE, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

In this lawsuit referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ada Brown, the Court granted Plaintiff Jeremy Leeper leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, *see* Dkt. No. 6, dismissed his initial complaint [Dkt. No. 3] on judicial screening under Section 1915(e)(2)(B)(ii), for Leeper's failure to state a claim on which relief may be granted, but allowed him to file an amended complaint, *see Leeper v. Carte Blanche*, No. 3:23-cv-1091-E-BN, 2023 WL 5242533 (N.D. Tex. July 18, 2023), *rec. accepted*, 2023 WL 5254654 (N.D. Tex. Aug. 15, 2023).

Leeper, a former employee of Defendant Carte Blanche, who is suing the restaurant for discrimination, then filed a six-page amended complaint. *See* Dkt. No. 14.

But, before the Court could complete its screening of this pleading under Section 1915, Leeper paid the filing fee and requested a summons from the Clerk of

Court. *See* Dkt. Nos. 19 & 20.

And, so, the Court set June 10, 2024, ninety days after Leeper paid the filing fee, as his deadline to perfect service under Federal Rule of Civil Procedure 4(m). *See Leeper v. Carte Blanche*, No. 3:23-cv-1091-E-BN, 2024 WL 1218550 (N.D. Tex. Mar. 20, 2024).

The Court denied Leeper's initial motion for default judgment because he failed to show that Carte Blanche was properly served and therefore failed to demonstrate that the Court acquired jurisdiction over the defendant, which is necessary to authorize entry of a valid default judgment. *See* Dkt. Nos. 26, 32, & 35.

The Court also denied Leeper's second motion for default judgment, after he failed to first secure entry of default from the Clerk of Court. *See Leeper v. Carte Blanche*, No. 3:23-cv-1091-E-BN, 2024 WL 3402648 (N.D. Tex. June 11, 2024), *rec. accepted*, 2024 WL 3405877 (N.D. Tex. July 12, 2024) (further denying Leeper's motion for a preliminary injunction).

Before the Court accepted the last recommendation that a motion for default judgment be denied, Leeper again moved for entry of default and default judgment. *See* Dkt. Nos. 40 & 43.

And the undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should deny the current requests for default judgment and dismiss this lawsuit.

**Legal Standards**

When a defendant has "failed to plead or otherwise defend" an action, the Court

may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide

whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893.

And default judgment may be appropriate where a defendant fails to follow court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to a defendant's "delay and failure to comply with court rules").

Next, the Court must assess the merits of the plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered*." Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2).

This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded

allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206.

The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. So detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

So, "in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two other caveats also apply. "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations

omitted). And, before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

**Analysis**

Even if there is jurisdiction over Carte Blanche because Leeper has now properly served this defendant – and even if the Court should direct the Clerk to enter default and no other procedural or other considerations would prevent entry of default judgment – the allegations in Leeper's amended complaint do not support default judgment. And, so, the Court may not enter a default judgment.

The facts alleged to support Leeper's amended claims are:

> I experienced Racial Employment Discrimination and Retaliation as an African American employee from the Defendant Carte Blanche on record. While working for Defendant Casey Larue who's a caucasian man and Owner of Carte Blanche; another caucasian employee named (James) actually came to me saying quote "That the only time that black people go swimming in the ocean is when his ancestors threw my ancestors off of ships."
> He recently also said the same statement, which he referred to as a "joke" to another African American female employee that worked with me. On another occasion, my General Manager Erica Lee that worked with me admittedly on record called people mixed with Black and Asian descent "jungle asians" in front of me.
> After notifying the Owner of Carte Blanche of the hateful racial based prejudicial comments that injured me, instead of reprimanding and/or firing the Manager and employee he reprimanded me and told me to do better at my job. Making it worse he allowed the caucasian employee that used hate and prejudice to attack me (James) to be promoted to become my boss and allowed him to harass me on a daily

>       basis while they then told me to just listen and take orders from (James) moving forward. I have a Witness that worked there with me that testifies that he found out and saw the owner Casey give instructions to begin [frivolously] writing me up after I made my complaint to him and was there to see him put James in mgmt position above me and then unjustly terminated me.

Dkt. No. 14 at 4.

As set out above, a default judgment need not be supported by detailed factual allegations – just "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

But, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

And, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of

further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

And, so, in support of default judgments, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

Applying this framework to "an employment discrimination case, the complaint need not 'contain specific facts establishing a prima facie case of discrimination under the framework set forth … in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).'" *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).

"But a plaintiff is still required to plead sufficient facts *on all of the ultimate elements* of [each] claim." *Id.* (cleaned up; emphasis in original).

And, at this stage, "a plaintiff must plead two 'ultimate elements' in order 'to support a disparate treatment claim … : (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* [a] protected status.'" *Thomas v. Dall. Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874367, at *4 (5th Cir. June 7, 2024) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); emphasis in *Cicalese*).

That is,

> [a] complaint need not allege each prong of the prima facie test for disparate treatment … ; to support a disparate treatment … , though, it must plausibly set out facts that the defendant took the adverse employment action against a plaintiff *because of* [a] protected status. [Accordingly, a] plaintiff must allege facts, direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's protected status] or that [the employer] treated similarly situated employees [not of the plaintiff's protected status] more favorably.

*Sanchez v. Chevron N. Am. Exploration & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *5 (5th Cir. Nov. 24, 2021) (per curiam) (cleaned up; emphasis in original).

"Similarly, for a retaliation claim, a plaintiff only needs to plausibly 'allege facts going to the ultimate elements of the claim to survive a motion to dismiss.'" *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *4 (5th Cir. Oct. 8, 2024) (per curiam) (quoting *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)).

Those "ultimate elements" are "that 1) [the plaintiff] engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright*, 990 F.3d at 433 (cleaned up).

And, "[i]n either context, '[a] court ... inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.'" *Smith*, 2024 WL 4442040, at *4 (quoting *Cicalese*, 924 F.3d at 767).

Starting with Leeper's discrimination claim, it's based on two comments implicating race, one made by a co-worker and one made by a manager, and "[w]hen a workplace is permeated with discriminatory intimidation, ridicule, and insult, that

is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023) (cleaned up).

> [C]ourts must look "at all the circumstances" to determine whether "an environment is 'hostile' or 'abusive.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). To that end, courts consider (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating, or a mere offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance. *West v. City of Hous.*, 960 F.3d 736, 742 (5th Cir. 2020). "[N]o single factor is determinative." *Id.*

*Vidrine v. Guillot*, No. 21-30203, 2022 WL 3544396, at *3 (5th Cir. Aug. 18, 2022) (per curiam) (citation modified).

But, in general, "[w]here the 'complained-of actions were isolated or infrequent,' [plaintiffs] 'cannot show that [their] harassment was frequent or pervasive.'" *Id.* (quoting *West*, 906 F.3d at 742; citation omitted)). That is, "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

And, while the two comments that Leeper alleges were made "were undoubtedly inappropriate for the workplace, they do not amount to objectively 'severe' harassment." *Tormos v. Costco Wholesale Corp.*, No. 1:19-CV-505-DAE, 2022 WL 22887729, at *8 (W.D. Tex. Mar. 14, 2022) (42 U.S.C. § 1981 case; citing *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400-01 (5th Cir. 2007) ("concluding 'no single incident of harassment [was] likely sufficient to establish severe or pervasive harassment' despite plaintiff being (1) called 'Taliban' and 'Arab,' (2) mocked because

- 10 -

of his diet and prayer rituals, (3) told to 'go back where he came from,' and (4) accused of Muslim extremism and of taking part in the September 11, 2001 terrorist attacks"); collecting other cases); *see also Mosley v. Marion Cnty., Miss.*, 111 F. App'x 726, 728 (5th Cir. 2004) (per curiam) ("Mosley has … offered evidence of three incidents involving the use of racial slurs. We agree, however, with the district court's conclusion that these claims alone are insufficient to establishing a general issue of material fact for Mosley's hostile work environment claim under Title VII."); *cf. Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (per curiam) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation." (citation omitted)).

Leeper's claimed retaliation stems from allegations that he internally complained about the comments; then, 'instead of reprimanding and/or firing the manager and employee[, the restaurant owner first] reprimanded [Leeper]" by telling him "to do better at [his] job." Dkt. No. 14 at 4.

Lodging an internal complaint about discrimination based on a protected status is an activity protected by Title VII and similar statutes. *See Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (per curiam) ("An employee that files an internal complaint of discrimination engages in a protected activity." (citation omitted)); *Walker v. Univ. of Tex. Med. Branch – Galveston*, No. 3:17-CV-00313, 2018 WL 3850827, at *4 (S.D. Tex. July 3, 2018) (noting that courts in this circuit "uniformly hold that an informal complaint must reference a discriminatory practice to constitute a protected activity" (citations omitted)), *rec. adopted*, 2018 WL

3844691 (S.D. Tex. Aug. 13, 2018).

But "a plaintiff seeking to establish a retaliatory adverse employment action [still] 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)), *abrogated on other grounds by Hamilton v. Dall. Cnty.*, 79 F.4th 494 (5th Cir. 2023).

And being told "to do better" at your job does not plausibly allege a materially adverse action, one that would dissuade a reasonable worker from complaining about acts thought to be discriminatory. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (per curiam) (written warning for insubordination, for being argumentative, and for excessive absenteeism was not an adverse employment action because it would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination" (citation omitted)); *see also EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2013 WL 1124063, at *6 (S.D. Tex. Mar. 18, 2013) ("[C]lose scrutiny, denying days off, failing to alter a schedule, or assigning a heavy workload are not considered adverse actions." (footnote omitted)).

In further support of his retaliation claim, Leeper alleges that the co-worker who uttered one of the offensive statements was later promoted to be his boss. He then contends that his new boss was "allowed [ ] to harass [him] on a daily basis while

they then told me to just listen and take orders from (James) moving forward" and that another employee "saw the owner Casey give instructions to begin frivolously writing me up after I made my complaint to him and was there to see him put James in mgmt position above me and then unjustly terminated me." Dkt. No. 14 at 4 (cleaned up).

A termination would count as a materially adverse action.

But the string of conclusions leading up to that action that Leeper sets out – which he does not tie to dates or other delineations of time, to allow the Court to judge the causal connectiveness between Leeper's internal complaints and his ultimate termination – is not enough to allege a plausible retaliation claim.

For these reasons, Leeper's amended allegations cannot support a default judgment. And these reasons demonstrate why the Court should now *sua sponte* dismiss the amended complaint.

Although Leeper's paying the filing fee prevented the Court's screening of his amended allegations under Section 1915, the Court may still "consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (citation omitted); *see also Bell v. Valdez*, 207 F.3d 657 (table), 2000 WL 122411, at *1 n.1 (5th Cir. Jan. 4, 2000) (per curiam) ("[I]t is well-established that the district court may dismiss a complaint on [Federal Rule of Civil Procedure] 12(b)(6) grounds *sua sponte*." (citations omitted)).

"The broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context

- 13 -

requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (citations omitted).

A magistrate judge's findings, conclusions, and recommendations provide notice, and the period for filing objections to them affords the parties an opportunity to respond. *See, e.g.*, *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *2 (N.D. Tex. Oct. 30, 2018) (citations omitted), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

And, so, while the undersigned finds that grounds for *sua sponte* dismissal exist, the opportunity to file objections to these findings, conclusions, and recommendation (as further explained below) allows Leeper still another opportunity to show that this case should not be dismissed and that the Court should instead grant leave to amend. *See Carver*, 18 F.4th at 498; *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

And the Court should dismiss this lawsuit with prejudice if Leeper fails to file timely objections that show a basis to amend to allege a plausible claim – that is, one

supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Recommendation

The Court should deny Plaintiff Jeremy Leeper's requests for default judgment [Dkt. Nos. 40 & 43] and, unless he shows through timely objections a basis to amend to allege a plausible claim, the Court should dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 28, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE